**UNITED STATES ex rel. GASH v.
NIERSTHEIMER.**

**Civ. A. No. 750–D.**

District Court, E. D. Illinois.
Dec. 23, 1947.

James Thomas Gash, pro se.

George F. Barrett, Atty. Gen., for respondent.

LINDLEY, District Judge.

The relator, James Thomas Gash, in his petition for a writ of habeas corpus, avers that he is unlawfully detained upon a sentence, by virtue of a verdict of guilty by a jury, for murder; that "he is being deprived of his liberty without due process of law"; that in the trial "he was denied protection of his rights guaranteed him by the constitution"; that the court refused to hear

witnesses in his behalf; that "before the time of the crime and afterwards, he was suffering from a mental ailment"; that "the court refused him counsel when it rendered judgment"; that "the court refused to postpone the judgment so that petitioner could have counsel prepare a motion for a new trial and a motion in arrest of judgment"; that "if the records would be produced before the court, they would show a continued denial of due process of law guaranteed him under the constitution"; that the state of Illinois has denied him his common law record and his bill of exceptions; that the remedies afforded by state laws have proved unavailable and seriously inadequate; that he is not detained by virtue of any process issued by any court in a case where such court "has exclusive jurisdiction" nor by virtue of a final judgment or decree of any competent court.

Many of the averments are obviously the conclusions of the pleader. Those of fact are that the trial court refused to hear witnesses as to relator's mental condition, refused him counsel when judgment was entered, refused him an opportunity to present a motion for new trial and refused him a bill of exceptions or transcript of record.

■ Though there may be some doubt, in view of the averments of the relator, that he has exhausted his state remedies, I am inclined to believe that the court has jurisdiction in view of the language of the Supreme Court in the case of White v. Ragen, 324 U.S. 760, 65 S.Ct. 978, 982, 89 L.Ed. 1348, wherein the court said: "A denial of habeas corpus by the lower state courts in Illinois, which have jurisdiction concurrent with that of the State Supreme Court to issue habeas corpus, see Ill. Ann. Stat. (Smith-Hurd) ch. 65, § 2; People v. Superior Court, 234 Ill. 186, 197, 84 N.E. 875, 14 Ann.Cas. 753, appears not to be reviewable by the Illinois Supreme Court * * *. For purposes of review here under § 237 of the Judicial Code, 28 U.S.C. § 344, 28 U.S.C.A. § 344, the denial of habeas corpus by one of the lower courts of Illinois, not reviewable in any other state

court, is a decision by the highest court of the state in which a decision could be had. Betts v. Brady (316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595; cf. Largent v. State of Texas, 318 U.S. 418, 63 S.Ct. 667, 87 L.Ed. 873." It appears that petitioner has sued out a writ of error to the Supreme Court of Illinois, which affirmed the judgment; that he has applied for a writ of habeas corpus in the Circuit Court of Randolph County within which he is confined and, upon denial thereof, sought certiorari in the United States Supreme Court; that that court denied certiorari on October 8, 1945. 326 U.S. 750, 66 S.Ct. 55, 90 L.Ed. 449. He asserts also that he has filed a petition for a writ in the Circuit Court of Richland County, where he was convicted and that that petition was denied. In view of the fact that he has not sought certiorari in the Supreme Court from the denial of his petition filed in Richland County, respondent takes the position that relator has not exhausted his state remedies. I prefer to hold, however, that, under the language quoted from the Supreme Court of the United States in White v. Ragen, supra, to require him to file another petition for certiorari would be an idle gesture. I assume that I have jurisdiction.

■ The relator's claim that he has been denied a transcript of the record by the state court is refuted by the record. In the first place, he had to have a record before he could present his writ of error to the Supreme Court of Illinois and, in the second place, a transcript of all proceedings in the trial court is attached to the return. From this it appears that on September 14, 1939, in the Circuit Court of Edwards County, Illinois, relator was indicted for murder; that, on October 13, 1939, he and his counsel being present in open court and having received a copy of the indictment and a list of the witnesses against him, relator was formally arraigned upon the indictment and entered his plea of not guilty; that his petition for a change of venue, alleging prejudice in the county where he was indicted, was granted to the county of Richland and the case set for trial on Monday, November 6, at 9 a. m.;

that in the Circuit Court of Richland County, pursuant to said change of venue, on Monday, November 6, 1939, relator and his attorneys were present in open court; that the People were present by the State's Attorney; that the People moved for leave to submit names of additional witnesses; that proof of notice of the motion was admitted by relator and that he made no objection to the motion; that leave as prayed was granted and names of additional witnesses so endorsed; that the People announced ready for trial; that relator announced that he was ready for trial; that a jury was legally selected to try the case; that a list of the jurors had been furnished relator; that thereupon the trial proceeded in due course; that evidence in behalf of the People and evidence in behalf of relator was presented and all evidence concluded; that on the 8th day of November arguments were heard; that the jury, after having retired for consideration of their verdict, returned their verdict finding relator "guilty of murder in manner and form as charged in the indictment," fixing his punishment "at imprisonment for the term of his natural life"; that the verdict was signed by the twelve jurors; that, on request of relator, the jury was polled and each juror announced that the verdict as returned was his verdict and that he had signed the same and was still satisfied with it; that, thereafter, on the 9th day of November, relator stated in open court that no motion was to be filed for new trial or in arrest of judgment; that, thereupon the court entered judgment on the verdict, sentencing relator to the penitentiary for the term of his natural life.

. The formal judgment recites that, the People being present by the State's Attorney and the relator in his own proper person as well as by his counsel, L. J. Voyles and H. S. Burgess, and neither relator nor his counsel saying anything further for him why the judgment of the court should not now be against him on the verdict finding him guilty of murder, judgment was entered. Thus a complete record of what occurred is before the court, and relator's averment that he is unable to secure a record is as I have said belied by the undisputed facts before me.

However, this does not dispose of his averment that he has been unable to secure a bill of exceptions. No facts justifying such a statement are presented and it would seem sufficient answer to his suggestion in this respect that he had open to him, if he was denied a bill of exceptions, the remedy of mandamus to compel the court to grant him such a bill. Undoubtedly, he had the right to protect himself in this respect when he prosecuted his writ of error to the Supreme Court of Illinois. In other words, a motion for a bill of exceptions addressed to the trial court in the prosecution of that writ of error was a proper, if not essential, remedy in his behalf. If the court refused to grant it, such action would have been error for which petitioner had his remedy in the further prosecution of the writ of error to the Supreme Court. Speaking otherwise, if relator was denied a bill of exceptions, it was because he failed to apply for same as indicated by the record or because he did not assign the action by the trial court denying him the bill as error in his review before the Supreme Court. In other words, this was an error arising in the trial of the cause.

The situation with regard to his averment that he was refused witnesses to prove his insanity is in no wise different legally. He was represented by counsel. He called his witnesses, and if the trial court refused to admit testimony which his counsel thought pertinent and relevant, such ruling was error on the part of the trial court, arising in the course of the trial, which he had a right to review in the prosecution of a writ of error to the Supreme Court.

By Chapter 38, Section 806 of the Illinois Statutes, being a part of the Criminal Code, an official statement must be made by the judge and state's attorney to the Department of Public Welfare, stating all of the facts relative to the conviction. Such a statement was filed, the two officials reporting, among other things, that the deceased was the divorced wife of relator; that on the day in question he engaged her in conversation in a village store in the presence of several people; that she was

afraid of him; that she asked the storekeeper to call the sheriff and that thereupon he shot and killed her; that relator had pleaded insanity and that the jury evidently rejected this plea. Apparently, therefore, he was permitted to offer evidence as to his sanity and the issue was decided against him. The relator controverts this averment of fact and, upon a determination of the sufficiency of his petition, I have no right to pass upon such controverted questions; but the fact remains that if he had witnesses whom the court refused to hear, an error of law occurred in the course of the trial, of which he had a right to complain in the Supreme Court in his prosecution of a writ of error to that court.

From an examination of all of relator's voluminous briefs and averments, it is apparent that the alleged errors of which he complains were, at the most, only errors committed in the course of the trial. It is the law everywhere, I think, that a writ of habeas corpus can not be used as a means of securing review of errors committed in the course of the trial. The remedy may not be used as a writ of error or to modify or revise the judgment of conviction upon which the custody and detention are based. Bowen v. Johnston, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455; Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969; Story v. Rives, 68 App.D.C. 325, 97 F.2d 182, certiorari denied 305 U.S. 595, 59 S.Ct. 71, 83 L.Ed. 377; Clark v. Surprenant, 9 Cir., 94 F.2d 969; Pellegrino v. Aderhold, D.C., 54 F.2d 939, affirmed, 5 Cir., 55 F.2d 1074, certiorari denied 286 U.S. 566, 52 S.Ct. 647, 76 L.Ed. 1298; Hall v. Johnston, 9 Cir., 86 F.2d 820; Sanderlin v. Smyth, 4 Cir., 138 F.2d 729; Riggs v. United States, 4 Cir., 14 F.2d 5; United States v. Curran, 3 Cir., 13 F.2d 96; Petrai v. Archer, 9 Cir., 8 F.2d 354; Quagon v. Biddle, 10 Cir., 5 F.2d 608. In other words, errors occurring in the trial, not affecting the jurisdiction of the trial court, will not authorize issuance of a writ of habeas corpus. Rea v. McDonald, 5 Cir., 153 F.2d 190, certiorari denied 327 U.S. 794, 66 S.Ct. 820, 90 L.Ed. 1020; Potter v. Dowd, 7 Cir., 146 F.2d 244; Wallace v. Hunter, 10 Cir., 149 F.2d 59; United States v. Ragen, 7 Cir., 149 F.2d 948; Dorsey v. Gill, 80 U.S.App.D.C. 9, 148 F.2d 857, certiorari denied 325 U.S. 890, 65 S.Ct. 1580, 89 L.Ed. 2003; Eury v. Huff, 4 Cir., 141 F.2d 554; Cash v. Huff, 4 Cir., 142 F.2d 60, certiorari denied 323 U.S. 747, 65 S.Ct. 46, 89 L.Ed. 598; McMullen v. Squier, 9 Cir., 144 F.2d 703. Thus, the court may not consider merely alleged erroneous rulings on questions of evidence, McNamara v. Henkel, 226 U.S. 520, 33 S.Ct. 146, 57 L.Ed. 330; Charlton v. Kelly, 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274, 46 L.R.A.,N.S., 397; Curtis v. Rives, 75 U.S. App.D.C. 66, 123 F.2d 936; or the sufficiency or competency of the evidence, Collins v. Johnston, 237 U.S. 502, 35 S.Ct. 649, 59 L.Ed. 1071; Moore v. Aderhold, 10 Cir., 108 F.2d 729; Ex parte Novotny, 7 Cir., 88 F.2d 72; Fisher v. Johnston, 9 Cir., 95 F.2d 36; or mistakes made by counsel during the progress of the trial, Jones v. Huff, 80 U.S.App.D.C. 254, 152 F.2d 14; Diggs v. Welch, 80 U.S. App.D.C. 5, 148 F.2d 667, certiorari denied 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002; Andrews v. Robertson, 5 Cir., 145 F.2d 101, certiorari denied 324 U.S. 874, 65 S.Ct. 1013, 89 L.Ed. 1427. The decisions of Illinois are in accord. See People v. Billow, 377 Ill. 236, 36 N.E.2d 339; People v. Thon, 374 Ill. 624, 30 N.E.2d 54; Ross v. Becker, 382 Ill. 404, 47 N.E.2d 475; People v. Wooten, 392 Ill. 542, 64 N.E.2d 857.

The language of the Supreme Court of the United States in Sunal v. Large, 332 U.S. 174, 67 S.Ct. 1588, 1592, is pertinent; "We are dealing here with a problem which has radiations far beyond the present cases. The courts which tried the defendants had jurisdiction over their persons and over the offense. They committed an error of law in excluding the defense which was tendered. That error did not go to the jurisdiction of the trial court. * * * If in such circumstances, habeas corpus could be used to correct the error, the writ would become a delayed motion for a new trial, renewed from time to time as the legal climate changed. Error which was not deemed sufficiently adequate to warrant an appeal would acquire new implications. Every error is potentially reversible error; and many rulings of the trial court spell the difference between conviction and acquittal. If defendants who accept the

judgment of conviction and do not appeal can later renew their attack on the judgment by habeas corpus, litigation in these criminal cases will be interminable. Wise judicial administration of the federal courts counsels against such course, at least where the error does not trench on any constitutional rights of defendants nor involve the jurisdiction of the trial court."

■ Relator's assertion that the errors of which he complains deprived him of his liberty without due process of law, is wholly unsubstantiated. Error of law, reviewable on appeal, is not a deprivation of constitutional right. Thus in Sunal v. Large, supra, the court said: "An endeavor is made to magnify the error in these trials to constitutional proportions, by asserting that the refusal of the proffered evidence robbed the trial of vitality by depriving defendants of their own real defense. But as much might be said of many rulings during a criminal trial. Defendants received throughout an opportunity to be heard and enjoyed all procedural guaranties granted by the Constitution. Error in ruling on the question of law did not infect the trial with lack of procedural due process."

■ Gash contends that his counsel was not present when he was sentenced. The common law record discloses otherwise. But whether counsel were present or not, the court had nothing to do, upon the verdict, except to enter judgment. Under the Illinois statute, the jury fixed the punishment. The record discloses that defendand did not wish to make motion for new trial or in arrest of judgment; and the record is that his counsel was present. The court could have entered no other judgment. As said by the Supreme Court in Hill v. United States ex rel. Wampler, 298 U.S. 460, at page 464, 56 S.Ct. 760, 762, 80 L.Ed. 1283: "The only sentence known to the law is the sentence or judgment entered upon the records of the court. Miller v. Aderhold, supra [288 U.S. 206, 53 S.Ct. 325, 77 L.Ed. 702]; Wagner v. United States, supra [9 Cir., 3 F.2d 864]; Manke v. People, supra [74 N.Y. 415]. If the entry is inaccurate, there is a remedy by motion to correct it to the end that it may speak the truth. People ex rel. Trainor v. Baker, 89 N.Y. 460, 466. But the judgment imports verity when collaterally assailed. Ibid. Until corrected in a direct proceeding, it says what it was meant to say, and this by an irrebuttable presumption. In any collateral inquiry, a court will close its ears to a suggestion that the sentence entered in the minutes is something other than the authentic expression of the sentence of the judge." In other words, the judgment must be taken at its face value until it has been corrected upon appeal. And again no constitutional question is involved because all the relator complains of could have been corrected upon direct review. See, in this connection, Lovvorn v. Johnston, 9 Cir., 118 F.2d 704, 706; Kent v. Sanford, 5 Cir., 121 F.2d 216, certiorari denied 315 U.S. 799, 62 S.Ct. 622, 86 L.Ed. 1200; Batson v. United States, 10 Cir., 137 F.2d 288.

In Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 586, 59 L.Ed. 969, the Supreme Court of the United States, after saying that mere errors in point of law, committed by a court in the exercise of its jurisdiction in a case subject to its cognizance, can not be reviewed by habeas corpus, continued: "As to the 'due process of law' that is required by the 14th Amendment, it is perfectly well settled that a criminal prosecution in the courts of a state, based upon a law not in itself repugnant to the Federal Constitution, and conducted according to the settled course of judicial proceedings as established by the law of the state, so long as it includes notice and a hearing, or an opportunity to be heard, before a court of competent jurisdiction, according to established modes of procedure, is 'due process' in the constitutional sense. * * * It is therefore conceded by counsel for appellant that, in the present case, we may not review irregularities or erroneous rulings upon the trial, however serious, and that the writ of habeas corpus will lie only in case the judgment under which the prisoner is detained is shown to be absolutely void for want of jurisdiction in the court that pronounced it, either because such jurisdiction was absent at the beginning, or because it was lost in the course of the proceedings. And since no question is made respecting the original jurisdiction of the trial court, the contention is and must be

that by the conditions that surrounded the trial, and the absence of defendant when the verdict was rendered, the court was deprived of jurisdiction to receive the verdict and pronounce the sentence." A question similar to that involved in this case was before the court at that time and, concerning it, the court said: "We come, next, to consider the effect to be given to the fact, admitted for present purposes, that Frank was not present in the court room when the verdict was rendered, his presence having been waived by his counsel, but without his knowledge or consent. No question is made but that at the common law and under the Georgia decisions it is the right of the prisoner to be present throughout the entire trial, from the commencement of the selection of the jury until the verdict is rendered and jury discharged. * * * But the effect of these decisions is that the prisoner may personally waive the right to be present when the verdict is rendered, and perhaps may waive it by authorized act of his counsel; and that where, without his consent, the verdict is received in his absence, he may treat this as an error, and by timely motion demand a new trial, or (it seems) he may elect to treat the verdict as a nullity by moving in due season to set it aside as such. But we are unable to find that the courts of Georgia have in any case held that, by receiving a verdict in the absence of the prisoner and without his consent, the jurisdiction of the trial court was terminated."

The law of Illinois appears to be the same. Thus, in People v. Colegrove, 342 Ill. 430, 174 N.E. 536, 539, the Supreme Court of that state said: "Errors claimed to have occurred in the trial and relied on for reversal must first be called to the attention of the trial court by a motion for a new trial and an opportunity given that court to correct the same. Herder v. People, 209 Ill. 50, 70 N.E. 674; Illinois Central Railroad Co. v. Johnson, 191 Ill. 594, 61 N.E. 334."

I conclude that upon the face of the record, the relator has presented no meritorious case within the scope of a proceeding for a writ of habeas corpus. Everything of which he complains constituted alleged legal error upon the part of the District Court. As the Supreme Court has said, if I should attempt at this time to inquire into the character of the alleged errors, I would be extending the proper scope of an application of a writ of habeas corpus into a course of judicial review condemned as amounting to interminable continuation of litigation as to errors occurring in trials.

The petition for a writ of habeas corpus is denied.